**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 09-5027

CEDRICK LAMONT HOOD,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
Thomas D. Schroeder, District Judge.
(1:08-cr-00160-TDS-1)

Argued: October 29, 2010

Decided: December 29, 2010

Before MOTZ, GREGORY, and SHEDD, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Gregory and Judge Shedd joined.

**COUNSEL**

**ARGUED**: William C. Ingram, Jr., OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greensboro, North Carolina, for Appellant. Paul Alexander Weinman, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Louis C. Allen, Federal Pub-

lic Defender, Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

Cedrick Lamont Hood pled guilty to possession with intent to distribute 16 grams of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(d), and carrying a firearm during a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The district court found him to be a career offender under the United States Sentencing Guidelines and so enhanced his sentence, imposing a 140-month term of imprisonment. Hood appeals, challenging only the sentence enhancement. He contends that a prior North Carolina conviction for possession of a weapon of mass death and destruction does not constitute a predicate "crime of violence" justifying a sentence as a career criminal under the Guidelines. We agree with the district court that this offense does constitute a "crime of violence" under the Guidelines. Accordingly, we affirm.

I.

The Guidelines provide that a court should enhance a defendant's sentence as a career offender if:

(1)    the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;

(2)    the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and

(3)   the defendant has at least two prior felony con-
victions of either a crime of violence or a con-
trolled substance offense.

U.S.S.G. § 4B1.1(a) (2010).

Hood concedes that he was at least eighteen years old when he committed the instant offense, as required by § 4B.1(1), and that the instant felony offense is a controlled substance offense, as required by § 4B1.1(a)(2). He further concedes that a prior conviction for felony robbery constitutes a "crime of violence" for purposes of § 4B1.1(a)(3). Appellant's Br. at 7. Therefore, the sole question before us is whether the other prior conviction on which the Government relies—a 1996 North Carolina conviction for felony possession of "a weapon of mass death and destruction," namely a sawed-off shotgun[1] —also constitutes a "crime of violence" so as to provide the Government with the second predicate conviction necessary for a sentence as a career offender under § 4B1.1(a)(3).

The Guidelines define a "crime of violence" as:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves

---

[1] Hood pled guilty to felony possession of a sawed-off shotgun, in violation of N.C. Gen. Stat. § 14-288.8 (2010). *See* Appellant's Br. at 5. That statute criminalizes the possession of a weapon "of mass death and destruction," § 14-288.8(a), which it defines to include "any shotgun with a barrel or barrels of less than 18 inches in length or an overall length of less than 26 inches." § 14-288.8(c)(3).

conduct that presents a serious potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a). Because § 4B1.2(a) does not expressly enumerate felony possession of a sawed-off shotgun, it constitutes a "crime of violence" only if it falls under the "residual" or "otherwise" clause in § 4B1.2(a)(2). Thus, to qualify, it must "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another."

In 2001, we considered this very question and held that possession of a sawed-off shotgun qualified as a "crime of violence" under the residual clause of the Guidelines. *See United States v. Johnson*, 246 F.3d 330 (4th Cir. 2001). In *Johnson*, however, our inquiry focused solely on whether possession of a sawed-off shotgun "presents a serious potential risk of physical injury to another." *Id.* at 332. Because we found it did, we held that possession of a sawed-off shotgun constituted a predicate "crime of violence" for purposes of § 4B1.2. *See id.* at 335.

Hood acknowledges our holding in *Johnson*, but contends that *Begay v. United States*, 553 U.S. 137 (2008), requires that we overrule *Johnson*. In *Begay*, the Supreme Court considered whether a DUI conviction qualifies as a predicate "violent felony" for purposes of a sentence enhancement under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B) (2006), *not* a predicate "crime of violence" under the Guidelines. We have held, however, that because "substantially similar" language defines a "violent felony" under ACCA and a "crime of violence" under the Guidelines, the *Begay* "analysis is applicable to § 4B1.2(a)(2)." *United States v. Seay*, 553 F.3d 732, 738-39 (4th Cir. 2009); *see also United States v. Rivers*, 595 F.3d 558, 560 n.1 (4th Cir. 2010). Moreover, "[b]ecause we are now bound to apply the *Begay* framework," we have noted that the analysis we employed in cases like *Johnson* "is no longer controlling." *United States v.*

*Roseboro*, 551 F.3d 226, 234 (4th Cir. 2009) *abrogated on other grounds by Rivers*, 595 F.3d at 564.

*Begay* instructs that when, as here, a predicate offense is not one of the listed crimes (burglary, arson, extortion, and use of explosives), evaluation of the risk of physical injury presented by the predicate offense constitutes only the first step of the proper inquiry. 553 U.S. at 142. A court must also determine whether the asserted predicate offense "involve[s] purposeful, violent, and aggressive conduct." *Id.* at 144 (internal quotation marks omitted).[2]

Thus, we must determine whether, in light of *Begay*, Hood's prior conviction for felony possession of a sawed-off shotgun constitutes a predicate "crime of violence" for purposes of the Sentencing Guidelines.

II.

Hood maintains that the two-step analysis established in *Begay* requires us to find that the challenged predicate does not qualify as a "crime of violence" under the Guidelines. He does not argue that possession of a sawed-off shotgun fails the first *Begay* prong, i.e., he does not dispute that it presents a serious potential risk of physical injury to another. *See* Appellant's Br. at 10-11. Hood does argue, however, that possession of a sawed-off shotgun fails the second prong of the *Begay* analysis because it is not similar in kind or degree of risk present in the Guidelines' enumerated offenses.

In support of this contention, Hood heavily relies on our unpublished opinion in *United States v. Haste*, 292 F. App'x.

---

[2]At sentencing, Hood acknowledged that the challenged predicate—possession of a sawed-off shotgun in violation of N.C. Gen. Stat. § 14-288.8—"has to be knowing." Accordingly, as he has also acknowledged, he argues only that the asserted predicate "doesn't meet the violent and aggressive requirements."

249 (4th Cir. 2008), in which we applied *Begay* to hold that possession of a sawed-off shotgun in violation of the same North Carolina statute did not constitute a "violent felony" under ACCA. As an unpublished opinion, *Haste* of course provides no precedential authority. *See, e.g.*, *United States v. Ruhe*, 191 F.3d 376, 392 (4th Cir. 1999) ("[U]npublished opinions are not binding precedent in this circuit."). However, even if *Haste* constituted binding precedent, we would not find *Haste*, which interpreted ACCA, controlling here.

This is so because of a fundamental difference between ACCA and the Guidelines with respect to their treatment of sawed-off shotguns.[3] While in ACCA, Congress provided no guidance through relevant history or commentary as to whether a sawed-off shotgun constituted a predicate "violent felony," the Sentencing Commission has expressly addressed the question of whether a sawed-off shotgun constitutes a "crime of violence." The commentary accompanying U.S.S.G. § 4B1.2 specifically defines a "crime of violence" to include "[u]nlawfully possessing a firearm described in 26 U.S.C. § 5845(a) (*e.g.*, a sawed-off shotgun or sawed-off rifle, silencer, bomb, or machine gun)." U.S.S.G. § 4B1.2, cmt. n.1.

The Supreme Court has long held that "commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38 (1993); *see also United States v. Turner*, 59 F.3d 481, 485 (4th Cir. 1995). Hood offers no evidence or even any argu-

---

[3]It is important to note that our holding is expressly limited to the possession of a sawed-off shotgun. Although the Guidelines and ACCA normally parallel each other, they can diverge where the commentary explicitly enumerates forbidden conduct. Where the commentary, however, is silent, no such divergence occurs. Additionally, we note that possession of a sawed-off shotgun is unique in that the weapon has no non-nefarious purposes.

ment that the commentary to § 4B1.2 conflicts with or constitutes a plainly erroneous reading of the guideline.

In fact, this commentary, rather than conflicting with § 4B1.2 or reading it erroneously, offers helpful interpretation of the guideline in question. Indeed, the commentary to § 4B1.2 speaks to the very *intent* question the *Begay* Court found sufficiently unclear in ACCA as to necessitate the second prong of its analysis, i.e. which crimes involving the risk of serious physical injury Congress intended to include as predicate offenses for purposes of the sentence enhancement. *See Begay*, 553 U.S. at 142. The *Begay* Court explained that the enumeration of specific offenses "indicates that the statute covers only *similar* crimes, rather than every crime that presents a serious potential risk of physical injury to another." *Id.* The Court repeatedly referred to what Congress "meant" by the ACCA's text, ultimately concluding that Congress "meant" to limit the residual clause to crimes like the enumerated ones. *Id.* Unlike Congress, the Commission has clearly stated what it meant on this issue. Because the Commission's stated intent is not contrary to the language of the guideline itself, or plainly erroneous, we must defer to the Commission. *United States v. Mason*, 284 F.3d 555, 559 (4th Cir. 2002) ("The Commission's interpretive commentary is akin to an agency's interpretation of its own legislative rules," and so "entitled to substantial deference") (internal quotation omitted).[4]

Our holding that possession of a sawed-off shotgun constitutes a "crime of violence" for purposes of § 4B1.1(a)(2) of the Guidelines parallels that of the Sixth Circuit in *United*

---

[4]It bears note that the Commission has not sought to revise the commentary with respect to its classification of sawed-off shotguns in light of *Begay*. Rather, although the "Sentencing Commission submitted proposed amendments to the Guidelines to Congress on May 1, 2009, more than a year after *Begay*," those "proposed amendments include a technical revision to the § 4B1.2 commentary, but do not change the definition of 'crime of violence' that includes possession of a sawed-off shotgun." *United States v. Vincent*, 575 F.3d 820, 826 n.5 (8th Cir. 2009).

*States v. Hawkins*, 554 F.3d 615 (6th Cir. 2009). Moreover, the Sixth Circuit deferred to the Guidelines commentary in determining that possession of a sawed-off shotgun would constitute a "crime of violence" under the Guidelines, while also affirming its prior holding in *United States v. Amos*, 501 F.3d 524, 530 (6th Cir. 2007), that the same offense did not constitute a "violent felony" under the ACCA. In words equally applicable here, the *Hawkins* court reasoned:

> Unlike the provision found in the ACCA, the career offender enhancement at issue here, through its Application Notes, specifically defines the term 'crime of violence' to include unlawful possession of a sawed-off shotgun. We stated in *Amos* that, 'if Congress had wanted the ACCA to cover offenses for possession of firearms as predicate offenses, it could easily have done so explicitly (i.e., the definition of violent felony could have included 'possession of a firearm in violation of state or federal law').' In its Application Notes to U.S.S.G. § 4B1.2, the Sentencing Commission has done just that.

*Hawkins*, 554 F.3d at 617 (internal citations omitted).[5]

### III.

For all of these reasons, the judgment of the district court is

*AFFIRMED*.

---

[5]The Eleventh Circuit has also recognized the authoritative nature of the Guidelines commentary in this context, holding that carrying a concealed weapon in violation of Florida law does not constitute a "crime of violence" under the Guidelines. *United States v. Archer*, 531 F.3d 1347 (11th Cir. 2008). The court reasoned that because the commentary to U.S.S.G. § 4B1.2 specifies that "'[c]rime of violence' does not include the unlawful possession of a firearm by a felon," non-felon possession of a firearm therefore should not constitute a "crime of violence" under the Guidelines either. *Id.* at 1352.